BLANK ROME LLP
Attorneys for Defendant
COSCO BEIJING INTERNATIONAL
 FREIGHT CO., LTD.
LeRoy Lambert (LL-3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MED-ASIA SHIPPING LTD., <br><br> Plaintiff, <br><br> -against- <br><br> COSCO BEIJING INTERNATIONAL FREIGHT CO., LTD., <br><br> Defendant. | 07 Civ. 9624 (RMB) |

### MEMORANDUM OF LAW OF DEFENDANT/ COUNTERCLAIMANT IN SUPPORT OF MOTION FOR COUNTERSECURITY/SECURITY FOR COSTS

# TABLE OF CONTENTS

PAGE

POINT I
DEFENDANT IS ENTITLED TO COUNTER SECURITY
IN THE AMOUNT OF $100,000................................................................................................. 3


POINT II
DEFENDANT'S ATTACHED FUNDS SHOULD BE RELEASED IF PLAINTIFFS DO NOT
PROMPTLY PROVIDE COUNTERSECURITY ...................................................................... 12


POINT III
IN ADDITION, OR IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SECURITY
FOR COSTS UNDER RULE E(2)(B) IN THE AMOUNT OF $100.000 .................................. 13

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aifos Trade S.A. v. Midgulf Int'l Ltd.*, 06 ...........................................................................8

*Aqua Stoli*, 460 F.3d 434 (2d Cir. 2006)...............................................................................9

*Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico, S.A.*, 2007 U.S.
    Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007) ...........................................................10

*Continental Shipping, Ltd. v. Telfair International Corp.*, 1990 U.S. Dist. LEXIS
    11549 (S.D.N.Y. Sep. 5, 1990) ..............................................................................1, 12

*Daeyang Shipping Co. Ltd. v. Flame S.A.*, 05 CV 7522 (AKH),.......................................10

*Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd.*, 2007 U.S. Dist.
    LEXIS 79685 (S.D.N.Y. October 18, 2007) ...................................................................9

*Front Carriers Ltd. v. Transfield ER Cape Ltd.*, 2007 U.S. Dist. LEXIS 85177
    (S.D.N.Y. Nov. 16, 2007) ...............................................................................................8

*Great Eastern Shipping Co., Ltd. v. Phoenix Shipping Corporation*, 2007 U.S.
    Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007)........................................................10

*Naias Marine, S.A. v. Trans Pacific Carriers Co., Ltd.*, 2008 U.S. Dist. LEXIS
    2438 (S.D.N.Y. January 10, 2008)..............................................................................6, 7

*North Offshore AS v. Rolv Berg Drive AS*, 2007 U.S. Dist. LEXIS 87648
    (S.D.N.Y. November 29, 2007) ......................................................................................7

*In re Oil Spill by the Amoco Cadiz*, 491 F. Supp. 161 (N.D. Ill. 1979)..............................11

*Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394 (2d Cir.
    1995) .....................................................................................................................5, 7, 14

*Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-
    Hadac Seebaderdienst*, 329 F.2d 538 (5th Cir. 1964) .................................................13

*The Rice Co. v. Express Sea Transport Corp.*, 2007 U.S. Dist. LEXIS 84300
    (S.D.N.Y. Nov. 15, 2007) ...............................................................................................7

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870
    (S.D.N.Y. Aug. 15, 2006) ...............................................................................................9

*Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400 (5th Cir. 1987)............................5, 13

128684.00601/6605592v.1

*Transportes Caribe, S.A. v. M/V Feder Trader*, 860 F.2d 637 (5th Cir. 1988) .................12

*Ulisses Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y.
2006) .....................................................................................................................................9

*Verton Navigation, Inc. v. Caribica Shipping Ltd.*, 1991 U.S. Dist. LEXIS 6722
(S.D.N.Y. May 1, 1991)..............................................................................................12, 13

*Washington Southern Navigation Co. v. Baltimore & Philadelphia Steamboat
Co.*, 263 U.S. 629 (1924) ...................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiff, a Chinese company, should provide to Defendant, a Chinese company, countersecurity and/or security for "costs" (which includes attorney's fees as that term is used in Hong Kong) in the amount of $100,000 so that the playing field with respect to security remains equitably balanced while the parties arbitrate their disputes in Hong Kong. The incident giving rise to the disputes occurred in late July/early August 2007. Plaintiff commenced this action on October 30, 2007, but has yet to commence arbitration or litigation in Hong Kong.

Plaintiff is obviously exploiting the ease of obtaining a prejudgment attachment of Defendant's funds in New York, and the continuous threat of disruption to Defendant's dollar-denominated wire transfers cleared in New York, in order to force a settlement of a claim which Plaintiff, in fact, prefers not to pursue on the merits. Plaintiff's failure to commence an action on the merits under the system in Hong Kong, where the prevailing party is awarded its attorney's fees, speaks volumes about Plaintiff's true intentions in this attachment action here. As Judge Mukasey stated in this context in *Continental Shipping, Ltd. v. Telfair Int'l Corp.*, 1990 U.S. Dist. LEXIS 11549, *4 (S.D.N.Y. Sep. 5, 1990), Plaintiff should be directed to "put its money where its mouth is." The Court should exercise its "broad discretion" and grant Defendant the relief it requests.

**FACTS**

Plaintiff is a Chinese company with an office in Hong Kong, and Defendant is a Chinese company with an office in Beijing.[1]  Complaint, ¶¶2-3; Answer, ¶3.[2]  Under a contract dated

---

[1] On July 1, 1997, the United Kingdom turned Hong Kong over to the People's Republic of China. Hong Kong is now a "Special Administrative Region" of China, governed under the motto, "One Country, Two Systems." www.gov.hk/en/abouthk/facts.htm.

1

June 5, 2007 ("Fixture Note"),[3] Plaintiff agreed to transport  goods on behalf of Defendant from Xingang, China to Romania. Complaint, ¶5. Plaintiff alleges the goods were stowed on the deck of the vessel. Complaint, ¶7. During the voyage, Plaintiff alleges that the goods shifted, became loose, and caused damage to the vessel. Complaint, ¶¶7-9. Plaintiff alleges it suffered damages in the principal amount of $231,990.99. Complaint, ¶ 9.

Plaintiff's claim is based on the meaning of the following clause in the Fixture Note: "full deck option at shippers/charterers/receivers risk + acct bs/l to be marked accordingly," Plaintiff contends that this clause not only exculpates Plaintiff from liability to Defendant for damage to the goods if stowed on deck, but also gives Plaintiff an affirmative right to recover from Defendant for the damages Plaintiff alleges it suffered as a result of the goods coming loose on deck. Complaint, ¶¶6-7.

Nothing – not the parties, not the events giving rise to the claims, not the governing law – nothing about this case has anything to do with New York or the United States.

Nevertheless, pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims,[4] Plaintiff has traveled around the globe and obtained an ex parte, prejudgment order of attachment of property of Defendant in this District. In addition to the principal amount of its alleged claim, $231,990.99, Plaintiff asked that the order include an amount for three years of interest, $57,931.95, and an amount for "costs," $100,000, that Plaintiff contends it will be entitled to recover if it is successful. Complaint, ¶11. The Court issued the order on October 30, 2007 ("Attachment Order") in the total amount of $389,922.94,

---

[2] The Complaint and Answer/Counterclaim are annexed to the accompanying Affidavit of LeRoy Lambert sworn to and subscribed February 7, 2008 ("Lambert Aff.") as Exhibits 1 and 4, respectively.

[3] The Fixture Note is annexed to the Complaint as Exhibit 1.

[4] These Supplemental Rules are lettered A-F and their text is found after the text of the Federal Rules of Civil Procedure and Forms Appendix. References to individual Rules in this memorandum of law will be to "Rule [letter]."

2

as claimed by Plaintiff. Lambert Aff., Ex. 2. To date, banks in New York have restrained various "electronic fund transfers" ("EFT's") pursuant to the Attachment Order totaling $74,828.29. Lambert Aff., ¶7.

Plaintiff alleges that the merits of the dispute are subject to arbitration in Hong Kong. Complaint, ¶¶10, 13. Defendant has advised Plaintiff that it agrees to arbitrate the dispute in Hong Kong. Lambert Aff., ¶4 and Ex. 3. Defendant further agreed, without prejudice to any of its rights,[5] to provide $315,094.65 to hold in an escrow account to make up the difference between the amount restrained to date in New York and the amount of Plaintiff's alleged claim. Lambert Aff., ¶8 and Ex. 6. Defendant has not responded. Lambert Aff., ¶9. Defendant has sought approval from the relevant financial authority in China and expects that the funds will be remitted in the near future. Lambert Aff., ¶8.

Defendant has answered the Complaint and pleaded a counterclaim. Lambert Aff., ¶5 and Ex. 4. Defendant has further submitted a declaration of a Hong Kong barrister affirming that a defendant's claim for "costs" is a claim under Hong Kong law. Declaration of Jose-Antonio Maurellet dated 21 January 2008 ("Maurellet Dec."), annexed as Exhibit 5 to the Lambert Affidavit.

**ARGUMENT**

**POINT I**

**DEFENDANT IS ENTITLED TO COUNTER SECURITY IN THE AMOUNT OF $100,000**

Rule E(7)(a) of the Federal Rules of Civil Procedure provides:

---

[5] Since Plaintiff has not yet pleaded a formal claim in Hong Kong, Defendant reserves its rights and defenses on the merits in Hong Kong as well as its rights here to move to vacate the attachment pursuant to Rule E(4) and/or to reduce the amount pursuant to Rule E(6) once Plaintiff presents its claim in Hong Kong.

3

> (a) When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim, unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

It is undisputed that "costs" under Hong Kong law include "attorney's fees" and are awarded to the prevailing party. Complaint ¶¶10-11, Answer, ¶¶10-11, 17-19; Maurellet Dec., ¶8.

As identified in the pre-motion submissions, the key issue is whether Defendant "asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action." Even though Plaintiff contends that it is entitled to security for its claim for costs and attorney's fees in the amount of $100,000 under Hong Kong law, Plaintiff contends that Defendant's claim for its costs and attorney's fees in the same amount is not a counterclaim within the meaning of Rule E(7), even though the "claim" for costs of either side depends on the outcome of the proceeding in Hong Kong.

The plain language of Rule E(7) does not require such a conclusion, nor has either party found any case which binds this Court to reach such a conclusion. Indeed, the language of Rule E(7), its history, the policy behind it, and the better-reasoned district court decisions under Rule E(7) fully support the granting of the relief requested here.

In *Washington Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 638-39 (1924), the Supreme Court stated that the purpose of Admiralty Rule 50 (the forerunner of Rule E(7)) was "to place the parties on an equality as regards security."

4

The leading case on Rule E(7) in the Second Circuit is *Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394 (2d Cir. 1995). After first quoting the text of the Rule, the Second Circuit stated (emphasis added):

> Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the *trial court possesses broad discretion* in deciding whether to order countersecurity under such conditions. . . .
>
> In exercising this discretion, the court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is "'to place the parties on an equality as regards security,'" . . . which usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded in rem or quasi in rem in an independent suit. On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. . . .

*Id.* at 399-400 (citations omitted). The Second Circuit continued:

> In balancing these policies, the trial court "is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection."

*Id.* at 400 (quoting *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987)).

As noted by the Second Circuit, the discretion afforded the district court should usually be exercised in favor of granting countersecurity "especially when the counterclaimant could have proceeded in rem or quasi in rem." The fact that the Second Circuit qualified that class of cases with "especially" makes it clear, however, that it is not necessary that the "counterclaim" support such an independent *in rem* or *quasi in rem* suit; a district court's discretion includes other types of claims as well. Otherwise, the Second Circuit would have stated that the class of

5

claims for which countersecurity could be ordered included such claims and no others. District courts have noted and made use of the "broad discretion" granted them under Rule E(7).

Judge Leisure recently issued a decision in a case which is instructive in defining the issues involved in the present case, *Naias Marine, S.A. v. Trans Pacific Carriers Co., Ltd.*, 2008 U.S. Dist LEXIS 2438 (S.D.N.Y. January 10, 2008). The defendant, Trans Pacific, had previously commenced a Rule B action against the plaintiff, Naias, in another action, assigned to Judge Stanton, and obtained security in that action. Naias, however, did not seek countersecurity in the action before Judge Stanton. Instead, it provided substitute security to Trans Pacific and Trans Pacific dismissed the action before Judge Stanton and released the attached funds. A month later Naias filed a new action against Trans Pacific, and it was assigned to Judge Leisure. The only claim asserted by Naias was for its costs, including attorney's fees, in the London arbitration in defending itself against Trans Pacific's claim.

Trans Pacific moved to dismiss for lack of subject matter jurisdiction, contending that such a claim for "costs" under either English law or U.S. law was not a "maritime" claim, the *sine qua non* for a maritime attachment under Rule B. Judge Leisure agreed and dismissed the claim for lack of subject matter jurisdiction. Judge Leisure did not dismiss the claim for "costs" because it was not a "claim," but because it was not a maritime claim.

In response to Naias' contention that Judge Leisure would have had the power to award countersecurity under Rule E(7) for such "costs," Judge Leisure held: "The question of whether Naias would have had a valid claim for counter-security under Rule E(7) is not appropriate in this action. Naias missed its opportunity to assert *such a counterclaim* by failing to do so while the Trans Pacific action [before Judge Stanton] was still pending." 2008 U.S. Dist LEXIS at *17 n.8 (emphasis added). Moreover, Judge Leisure specifically noted that the standards for granting

6

countersecurity under Rule E(7) and maintaining an attachment under Rule B are different. Under Rule E(7), "the Court's analysis differs from the consideration here of whether Naias's independent claim affords subject matter jurisdiction." *Id.* at \*16 & n.9. "While Rules E(2)(b) and E(7) may be indicative of the Court's ability to grant security for costs under other circumstances, here, where Naias has failed to set forth a maritime claim, those rules do not apply." *Id.* at \*17. *See also North Offshore AS v. Rolv Berg Drive AS*, 2007 U.S. Dist LEXIS 87648, \*6 (S.D.N.Y. November 29, 2007) (Stein, J.) ("Nothing in the Second Circuit's decision in *Aqua Stoli [Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006)] suggests that a motion for countersecurity pursuant to Rule E(7) need only meet the *prima facie* requirements of an admiralty claim pursuant to *Rule B*. Rather, motions for countersecurity remain—even post-*Aqua Stoli*—subject to the "broad discretion" of the Court.").

Accordingly, Judge Leisure's decision strongly suggests that a claim for "costs" under English (and, in this case Hong Kong) law is a claim, and an independent claim, for which countersecurity under Rule E(7) may be granted; it is simply not a "maritime claim" which satisfies Rule B.

Here, Defendant has pleaded a counterclaim for its costs in the eventual Hong Kong arbitration. Lambert Aff., Ex. 4. Although Plaintiff has not filed a reply to the counterclaim, Defendant has submitted the Maurellet Declaration by a distinguished barrister in Hong Kong and a consultant editor of the Hong Kong Law Reports and Digest, which makes clear that a prevailing defendant has a claim for "costs," including attorneys fees, under Hong Kong law. Maurellet Dec. ¶3. The test is whether the counterclaim is "non-frivolous." *Ferruzzi*, 56 F.3d at 400. "Once satisfied that the counterclaim is 'non-frivolous,' a court need not probe more deeply into the strength of the counterclaim to grant counter-security." *The Rice Co. v. Express*

7

*Sea Transport Corp.*, 2007 U.S. Dist. LEXIS 84300, \*10 (S.D.N.Y. Nov. 15, 2007) (Pauley, J.).

*See also Front Carriers Ltd. v. Transfield ER Cape Ltd.*, 2007 U.S. Dist. LEXIS 85177, \*6-7 (S.D.N.Y. Nov. 16, 2007) (Sullivan, J.) ("court should do no more than screen out 'totally frivolous claims'") (reviewing cases).

Here, Plaintiff cannot seriously contend that Defendant will not receive its "costs" if Defendant successfully defends the claim. Defendant's claim is therefore legally sound. Nor can Plaintiff seriously contend that the amount, $100,000, is overstated. It is the same amount Plaintiff contends it is entitled to. While Plaintiff has not yet replied to the counterclaim or submitted its opposition papers, we assume that it will not plead impecuniousness or that being required to post countersecurity in the amount of $100,000 would "impose burdensome costs on [Plaintiff] that would prevent it from bringing suit." *Ferruzzi, supra*, at 400.

According to its pre-motion letter of January 18, Plaintiff contends (page 1): "A party simply cannot obtain countersecurity for costs of defending against affirmative claims." Plaintiff relies on Judge Stein's decision in *Aifos Trade S.A. v. Midgulf Int'l Ltd.*, 06 Civ. 203 (SHS) (S.D.N.Y. 2006). In *Aifos*, the plaintiff had obtained security by maritime attachment. The defendant asserted a counterclaim in the principal amount of $34,212.58. It asked for countersecurity in that amount plus $30,000 in arbitrators' fees and expenses and $50,000 in attorneys' fees and expenses for a total of $120,905. Judge Stein held that this amount was "excessive because it appears to incorporate the expense of not only prosecuting its counterclaim, but also of defending against the original complaint, a purpose that is beyond the scope of Rule E(7) . . . which provides that countersecurity is to cover only the 'damages demanded in the counterclaim.'" Judge Stein reduced the amount of countersecurity to $51,000, an amount which included "the full amount of the counterclaim plus interest as well as attorney's

8

fees and arbitrators' costs of $10,000, which is a reasonable estimate of the cost of prosecuting the counterclaim."

Judge Chin, however, reached the opposite conclusion on the same facts in *Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd.*, 2007 U.S. Dist LEXIS 79685 (S.D.N.Y. October 18, 2007). The plaintiff had a claim for $1,605,367, including "costs" in the amount of $300,000, and obtained security for its claims in London in that amount through a Rule B attachment here. Defendant then asserted a counterclaim in the amount of $92,289.35 and asked for countersecurity in that amount plus $300,000 in costs. Plaintiff contended that the defendant was entitled only to costs associated with the counterclaim, not for defending the plaintiff's claim. Defendant countered that to prevail on its counterclaim it had to defeat the original claim. Noting that the case law was "limited," Judge Chin directed the plaintiff to provide countersecurity in the full amount of $300,000.

In reaching this conclusion, Judge Chin stated that Judge Scheindlin's decision *in Ulisses Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006) was "the most relevant."[6] *Fednav*, 2007 U.S. Dist LEXIS 79685 at *3. There, the plaintiff had asserted a claim for wrongful attachment. The defendant agreed, and Judge Scheindlin found, that such a counterclaim did not arise from the same occurrence or transaction which was the subject of litigation between the parties in London. 415 F.Supp. 2d at 329. Nevertheless, she found that the defendant's claim for "costs" (in the amount of £756,526.15) in defending itself against plaintiff's claim in London were "inextricably intertwined with the original transaction that is the subject of the London Litigation." *Id.*

---

[6] *Ulisses* was decided prior to *Aqua Stoli,* 460 F.3d 434 (2d Cir. 2006), and the Second Circuit rejected the "needs" test Judge Scheindlin applied with respect to the Rule B attachment, 460 F.3d at 446 & n.8, as noted by Judge Wood in the same context in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). Neither the Second Circuit nor Judge Wood addressed the holding in *Ulisses* allowing countersecurity for costs.

The maritime bar and, respectfully, the judges in this district have struggled to keep track of the explosion of Rule B cases in the past four years. Cases are heard and decided on an expedited basis. Decisions are often issued from the bench. Sometimes there is time for the luxury of a formal opinion. Sometimes there is only time for a statement of the result. Sometimes the decisions are selected by Westlaw or Lexis. Sometimes they are not. Moreover, as Judge Leisure recently pointed out, disparate results on apparently similar facts are not surprising, "given that 'admiralty courts [are] courts of purest equity.'" *Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico, S.A.*, 2007 U.S. Dist. LEXIS 18827, *5 (S.D.N.Y. Feb. 26, 2007).

In *Great Eastern Shipping Co., Ltd. v. Phoenix Shipping Corporation*, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007), Judge Cote admonished the maritime bar to cite district court decisions (although not controlling) adverse to one's position. The undersigned asked his colleagues if any were aware of unreported decisions on the issue presented here and was made aware of one such decision. In *Daeyang Shipping Co. Ltd. v. Flame S.A.*, 05 CV 7522 (AKH), (S.D.N.Y. May 11, 2006), Judge Hellerstein issued a one sentence ruling stating: "There not being a claim or counterclaim by the party moving for countersecurity, Flame, S.A., against plaintiff, Daeyang Shipping Co. Ltd., in neither arbitration or judicial litigation, and no other sufficient ground for countersecurity having been given, defendant Flame's motion for countersecurity is denied."

Rule 13(a)(1) of the Federal Rules of Civil Procedure uses virtually the same words as Rule E(7) in defining a "compulsory counterclaim" as a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Under Rule 13(a), courts have addressed claims for contribution/indemnity, including attorney's fees. In

10

such a case, the "recent trend" is to allow such a claim for contribution/indemnity to proceed in the one action under Rule 13(a) and deny the plaintiff's motion to dismiss. For example, in *In re Oil Spill by the Amoco Cadiz*, 491 F. Supp. 161 (N.D. Ill. 1979), the vessel owner filed a counterclaim against the Republic of France asking France to contribute to its costs in connection with cleaning up an oil spill. France moved to dismiss, inter alia, on the ground that this claim for contribution was "not mature" and cannot be asserted by counterclaim under Rule 13(a) because it depends on the outcome of the main action, that is, the claim did not arise unless and until the vessel owner was held liable. The district court stated that "the recent trend and the more pragmatic approach, has been to permit counterclaims for contribution." *Id.* at 165. Wright and Miller had already endorsed this approach in 1979 and continue to do so today: "This approach seems sound when the counterclaim is based on pre-action events and only the right to relief depends upon the outcome of the main action." 6 C. Wright and A. Miller, Federal Practice and Procedure, § 1411 (2007).

Here, Defendant's counterclaim for "costs" is based on the same contract and events giving rise to the alleged breach, i.e., the "same transaction or occurrence" as Plaintiff's claim. Defendant's right to relief, to recover its costs from Plaintiff under Hong Kong law, "depends upon the outcome of the main action." Under Hong Kong law, the claim rises or falls, as does Plaintiff's claim for costs, with the outcome of the action.

With respect, Judge Stein's reading of "damages demanded in the counterclaim" begs the question. It begs the question because, as here, Defendant has pleaded a non-frivolous claim for damages, arising out of the same transaction or occurrence, cognizable under Hong Kong law, reducible to a money judgment, and enforceable against assets of Plaintiff. Where, as here, the merits are being decided in a jurisdiction where "costs follow the event," and where, as here,

11

Plaintiff has been given security which include its costs, the better rule, we submit, is the rule adopted by Judge Scheindlin, that countersecurity for costs is appropriate because the claim for costs is "inextricably intertwined with the original transaction that is the subject of the [Hong Kong proceeding]."

The claim and counterclaim in the present action all arise from the carriage of goods from China to Romania pursuant to the Fixture Note. It is axiomatic that claims and counterclaims between parties arising out of a vessel charter and bills of lading issued thereunder are considered "arising out of the same transaction" for purposes of Supplemental Rule E(7). *Verton Navigation, Inc. v. Caribica Shipping Ltd.*, 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991); *Transportes Caribe, S.A. v. M/V Feder Trader*, 860 F.2d 637 (5th Cir. 1988).

Plaintiff has obtained security from Defendant. Accordingly, as Judge Mukasey stated in this context in *Continental Shipping, Ltd. v. Telfair Int'l Corp.*, 1990 U.S. Dist. LEXIS 11549, *4 (S.D.N.Y. Sep. 5, 1990), Plaintiff should be directed to "put its money where its mouth is" and provide security to Defendant in the amount of $100,000, consistent with the well-recognized goal of Supplemental Rule E(7), which is to place the parties on equal footing as regards security and thereby afford reciprocal protection while the parties arbitrate their disputes in Hong Kong.

## POINT II

### DEFENDANT'S ATTACHED FUNDS SHOULD BE RELEASED IF PLAINTIFFS DO NOT PROMPTLY PROVIDE COUNTERSECURITY

Rule E(7)(a) provides that the Plaintiff's claim must be stayed until countersecurity is given, unless the Court orders otherwise. However, in the present case, the action is to be stayed in any event pending arbitration in Hong Kong. Therefore, merely staying the proceedings would not be a remedy if Plaintiff fails to provide countersecurity.

12

Courts have not been reticent to exercise their authority to vacate a plaintiff's attachment if the plaintiff fails to comply with an order requiring it to provide security for a defendant's counterclaim. *See Verton Navigation, Inc. v. Caribica Shipping Ltd.,* 1992 U.S. District LEXIS 517 (S.D.N.Y. January 21, 1992) (Keenan, J). In *Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-Hadac Seebaderdienst,* 329 F.2d 538 (5th Cir. 1964), a shipowner posted security in order to release its vessel which had been arrested by charterer. The owner thereafter sought counter-security. The Fifth Circuit held that it was within the trial court's broad discretion to release owner's security since charterer was financially unable to post counter-security.

In *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400 (5th Cir. 1987), the Fifth Circuit again released security when a party claiming financial inability failed to post counter-security. According to the Court:

> . . . [T]he exercise of the trial court's discretion to order counter-security is to be guarded by the essential and equitable purposes of the Rule. In doing so, the Court must weigh the importance of the security interests giving rise to the initial seizure, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.
>
> * * *
>
> . . . We can readily contemplate instances when permitting one party to enjoy security without requiring counter-security could result in injustice. For example, <u>when no maritime lien or statutory right is involved, as in an action commenced quasi in rem under Rule B, there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification -- or in the terms of Rule E(7), "cause shown."</u>

808 F.2d 404-405 (emphasis added.)

In the present case, the security obtained from Defendant should be released if Plaintiff fails to provide countersecurity within ten days of being so directed, and any order directing the

13

posting of countersecurity should explicitly state that Plaintiff's attachment of Defendant's funds

will be vacated if the order is not timely complied with.

### POINT III

### IN ADDITION, OR IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SECURITY FOR COSTS UNDER RULE E(2)(b) IN THE AMOUNT OF $100,000

Rule E(2)(b) provides:

> Subject to the provisions of Rule 54(d) and of relevant statutes, the court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court.

In *Ferruzzi, supra*, 56 F.3d at 401-02, the Second Circuit denied the defendant's request

for attorney's fees under Rule E(2)(b). The Second Circuit affirmed the district court's denial of

the request. It appears that the defendant there did not contend that it was entitled to such an

award under English law and procedure. According to the Second Circuit, granting security for

"costs" which include amounts for attorney's fees would be contrary to the "American rule"

under which "the prevailing party may not recover attorney's fees from the loser, absent statutory

or contractual provisions to the contrary." *Id*. at 401. Here, however, there is such a statutory or

contractual bar under the Fixture Note and Hong Kong law and procedure. Indeed, Plaintiff

concedes the "American Rule" does <u>not</u> apply and has itself obtained security for its "costs"

including attorney's fees. Accordingly, Rule E(2)(b) offers an additional, and perhaps more

straightforward, remedy to achieve an equitable balance in cases where, as here, the defendant's

14

counterclaim consists of "costs," which includes attorney's fees, as that term is used in other common law jurisdictions such as England and, here, Hong Kong.

## CONCLUSION

For the foregoing reasons, Plaintiff should be ordered to post countersecurity and/or security for costs in the amount of $100,000.00 in the form of cash, a bond or other acceptable form to Defendant, or, if suitable countersecurity/security is not posted within ten days of entry of an order of this Court, then Plaintiff's attachment should be vacated and this action dismissed. This Court should further grant Defendant such other and further relief as may be just and equitable.

Dated: New York, NY
      February 7, 2008

                            Respectfully submitted,

                            BLANK ROME LLP
                            Attorneys for Defendant
                            COSCO BEIJING INTERNATIONAL
                              FREIGHT CO., LTD.

By _____
                    LeRoy Lambert (LL 3519)
                    The Chrysler Building
                    405 Lexington Avenue
                    New York, NY  10174-0208
                    Tel.:  (212) 885-5000

15